**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **FIRSTMERIT BANK, N.A., as the Assignee of the Federal Deposit Insurance Corporation, Receiver for Midwest Bank & Trust Company,** | ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **No. 14 C 8749** |
| **SPENCER HOSSEINI, Individually, and as Trustee of the Debbie J. Hosseini Trust Dated July 31, 2008, NAJAF HOSSEINI, Individually, and as Trustee of the Najaf Hosseini Trust Dated July 31, 2008, MEHRI JAFARI-BOROUJERDI, ABE KASHANI, and GOLDEN PROPERTIES MANAGEMENT, LLC,** | ) ) ) ) ) ) ) ) ) ) | **Magistrate Judge Finnegan** |
| **Defendants.** | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff FirstMerit Bank, N.A. ("FirstMerit") is the assignee of a loan that Defendant Najaf Hosseini ("Najaf") took out in 2006, secured by a mortgage on property located at 2244 N. Cicero Ave., Chicago, Illinois.  When Najaf stopped making his mortgage payments, FirstMerit foreclosed on the property in 2011 and later obtained a $148,313.98 *in personam* judgment against Najaf and his former used auto dealership in the Circuit Court of Cook County.  In this diversity suit, FirstMerit charges Najaf, certain of his family members, and Golden Properties Management, LLC ("Golden"), with engaging in a fraudulent scheme to place Najaf's assets beyond the reach of FirstMerit and other unspecified creditors seeking to collect on his debts, in violation of the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 160/1 *et seq.*, and

Illinois common law. The accused family members include Najaf's son, Spencer Hosseini ("Spencer"); Najaf's sister-in-law, Mehri Jafari-Boroujerdi ("Mehri"); and Najaf's brother-in-law, Abe Kashani ("Abe").

The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Defendants now seek to dismiss the Complaint in its entirety for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). Defendants argue that: (1) the claims set forth in the Complaint are barred by the doctrine of res judicata because they could have been raised during supplemental state court proceedings to discover Najaf's assets; (2) the Court should abstain from hearing the case under the *Wilton-Brillhart* doctrine given the state court proceedings; (3) the UFTA claims are barred because the allegedly fraudulent asset transfers occurred outside the statute of limitations period; (4) the common law fraud claims have not been pleaded with the requisite particularity under Rule 9(b); and (5) allegations relating to the transfer of certain properties that Najaf never actually owned should be stricken.

For the reasons set forth here, the Court does not find any of these arguments persuasive and denies the motion to dismiss.

## BACKGROUND

In reviewing this motion, the Court accepts the Complaint's factual allegations as true and draws all reasonable inferences in FirstMerit's favor. *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013).

## A.     Najaf's Properties, 1987 through 2007

FirstMerit's lawsuit seeks to avoid the transfer of certain properties that Najaf acquired, either individually or with his wife, Debbie J. Hosseini, so they can be used to satisfy the $148,313.98 debt he owes to FirstMerit.  Najaf acquired the first property at 2250 N. Cicero Ave., Chicago, Illinois (the "2250 Property"), in 1987, for $43,000. (Cmplt. ¶¶ 23, 27, 42).  Najaf and Debbie jointly acquired a second property at 2227 N. Rand Rd., Palatine, Illinois (the "2227 Property"), in 1997, as the beneficiaries of Trust No. 97-4184 held by Cole Taylor Bank.  (*Id.* ¶¶ 22, 26).  In 2002, Najaf acquired the property at 1648 N. Cicero Ave., Chicago, Illinois (the "1648 Property"), and operated his used auto sales business, Magnum Motors, Inc. ("Magnum"), from that location "between 2002 and 2010." (*Id.* ¶¶ 14, 19, 20, 28).  A few years later in 2006, Najaf took out a loan (the "Loan") from Midwest Bank & Trust Company ("Midwest") secured with property located at 2244 N. Cicero Ave., Chicago, Illinois (the "2244 Property").  (*Id.* ¶ 57).  This is the secured loan eventually assigned to FirstMerit.  At some unspecified point prior to 2008, Najaf and Debbie also acquired a home located at 700 Kelso Glen Ct., Inverness, Illinois (the "Marital Residence"), which they held as tenants by the entirety.  (*Id.* ¶ 38).

## B.     Creation of the Limited Liability Company Golden and the Najaf and Debbie Trusts

Sometime in 2007, Najaf's finances "began to falter" when his used auto sales business "collapsed with much of the economy." (*Id.* ¶ 29).  Najaf "attempted to fill the gaps in his budget by resorting to gambling," resulting in "hundreds of thousands of dollars in losses over the next few years." (*Id.*).  By no later than mid-2008, Najaf was generally unable to pay his debts as they became due, rendering him insolvent.  (*Id.* at

30). It was during this "very financially precarious time," FirstMerit alleges, that Najaf, Debbie, Mehri and Abe engaged in their scheme to defraud, attempting to place Najaf's assets outside the reach of his creditors "while continuing to pay and transfer property stemming from those assets to [Najaf]'s family members." (*Id.* ¶ 31).

First, on March 14, 2008, Najaf and Debbie created Golden, an Illinois limited liability company, with each of them holding a 50% membership interest. (*Id.* ¶¶ 12, 32). Then on July 31, 2008, Najaf and Debbie created (1) the Najaf Hosseini Trust dated July 31, 2008 (the "Najaf Trust"), a revocable trust with Najaf as the settlor, trustee, and beneficiary with authority to dispose of any and all property at any time, including principal and interest; and (2) the Debbie J. Hosseini Trust dated July 31, 2008 (the "Debbie Trust"), a revocable trust with Debbie as the settlor, trustee, and beneficiary with authority to dispose of any and all property at any time, including principal and interest. (*Id.* ¶¶ 8-10, 33). Thereafter, Najaf and Debbie each transferred their 50% membership interests in Golden to their respective trusts; i.e., Najaf's 50% interest went to the Najaf Trust, and Debbie's 50% interest went to the Debbie Trust. (*Id.* ¶ 34).

Sometime in 2008, Najaf transferred the 1648 Property and the 2250 Property to Golden. (*Id.* ¶¶ 24, 27). In 2009, Golden additionally acquired property located at 1735-41 N. Cicero Ave., Chicago, Illinois (the "1735-41 Property"). (*Id.* ¶¶ 21, 25, 28). The following year, in 2010, Najaf and Debbie transferred the 2227 Property from the Cole Taylor Bank Trust to Golden. (*Id.* ¶ 26).

## C. Property Transfers in 2011 and Foreclosure on the 2244 Property

As discussed in more detail below, FirstMerit claims that though the intent behind creating Golden and the Najaf Trust was to place Najaf's assets beyond the reach of

creditors, it did not accomplish that intended result. Therefore, on October 3, 2011, Najaf, in his capacity as trustee of the Najaf Trust, transferred and assigned his 50% interest in Golden to the Debbie Trust for no consideration. (*Id.* ¶¶ 36, 37). The same day, Najaf and Debbie quitclaimed their ownership interests in the Marital Residence to each other as trustees of their respective trusts in tenancy by the entirety. (*Id.* ¶ 38). Two days later, on October 5, 2011, Najaf moved out of the Marital Residence, thereby severing the tenancy by the entirety and creating a joint tenancy. (*Id.* ¶ 39). Since that time, Najaf has lived in the 2250 Property. (*Id.* ¶ 43).

On November 9, 2011, FirstMerit initiated a lawsuit against Najaf in Illinois state court seeking foreclosure on the 2244 Property securing his Loan from Midwest (the "Foreclosure Case").[1] At that time, the principal owed on the Loan was not less than $458,529.68. (*Id.* ¶¶ 59, 60, 63-66).

On December 12, 2011, Debbie executed a quitclaim deed on behalf of Golden conveying all of Golden's interest in the 2250 Property (where Najaf had been living since October 2011) to Mehri, Najaf's sister-in-law, "in payment of antecedent debt of [Najaf] to Mehri in the amount of $28,000." (*Id.* ¶¶ 40, 41). At the time of the transfer, the 2250 Property had an assessed value of over $245,000 and was totally unencumbered. (*Id.* ¶ 42). Notwithstanding the transfer, Najaf still lives at that location to this date. (*Id.* ¶ 43).

---

[1] Midwest had been closed by the Illinois Department of Financial Professional Regulation – Division of Banking back on May 14, 2010, at which time the Federal Deposit Insurance Corporation was named Receiver. The same day, FirstMerit purchased for value and took assignment and possession of the Loan Midwest had made to Najaf. (Cmplt. ¶¶ 61, 63-66).

## D.     The Divorce and Foreclosure Judgment

On April 18, 2012, Debbie filed a petition for dissolution of her marriage to Najaf. The following month, on May 1, 2012, Debbie and Najaf executed an agreed Judgment for Dissolution of Marriage, which incorporated a Marital Settlement Agreement (the "Divorce Agreement").  (*Id.* ¶¶ 44, 45).   Though the Debbie Trust already had sole ownership of Golden at that time, the Divorce Agreement nonetheless purported to award Debbie "100% of the parties' interest in and to Golden Properties Management, LLC, including all real estate owned by said LLC, free and clear of any interest on the part of the Husband [Najaf]."  (*Id.* ¶ 46).   The Divorce Agreement also transferred the Marital Residence to Debbie, with Debbie responsible for paying all attendant mortgages.  (*Id.* ¶ 47).   In that regard, on May 15, 2012, Najaf conveyed the Najaf Trust's interest in the Marital Residence to Debbie as Trustee of the Debbie Trust.  This left Najaf with "no substantial assets to satisfy any of his debts to creditors."  (*Id.* ¶¶ 48, 49).

On October 11, 2012, FirstMerit obtained an *in personam* judgment against Najaf in the Illinois state Foreclosure Case in the amount of $125,386.75.  It also obtained a judgment against Najaf and his auto sales business, Magnum, in the amount of $22,927.23, bringing the total judgment to $148,313.98.  (*Id.* ¶ 67).   Twelve days later, on October 23, 2012, FirstMerit asked the Illinois state court to issue Najaf a citation to discover assets.  (Doc. 24-1, at 13).[2]

---

[2]      Shortly before this, the court also approved the Sheriff's sale of the property.  The Court may take judicial notice of the public docket from the Foreclosure Case without converting the motion to dismiss into one for summary judgment.  *United States v. City of Rock Island, Ill.*, 182 F. Supp. 2d 690, 695 (C.D. Ill. 2001).

### E. Golden's Current Income

As the owner of the 1648 Property, the 1735-41 Property, and the 2227 Property, Golden receives monthly revenues of between $8,500 and $16,000 "depending on when rent is paid by the tenants to Golden." (*Id.* ¶ 51).  Golden pays more than $4,100 per month for the mortgage on the Marital Residence, and pays at least $2,000 per month to Abe, Najaf's brother-in-law, "on account of a purported antecedent debt owed by [Najaf] to Abe." (*Id.* ¶¶ 52, 53).  As noted, Najaf continues to live at the 2250 Property now owned by Mehri. (*Id.* ¶ 54).

After Debbie died in 2013, Debbie and Najaf's son Spencer took over as successor trustee and sole beneficiary of the Debbie Trust, which remains the sole member of Golden and the owner of the Marital Residence. (*Id.* ¶¶ 55, 56).

### F. This Lawsuit

On November 3, 2014, FirstMerit filed this lawsuit charging Najaf, Spencer, Mehri, Abe and Golden with engaging in a fraudulent scheme to place Najaf's assets beyond the reach of his creditors.  Count I seeks a declaration that the Najaf Trust is void as to FirstMerit and that all transfers made by the trust constitute transfers of Najaf's own property.  Counts II through IV seek to avoid the October 3, 2011 transfer of the Najaf Trust's 50% interest in Golden to the Debbie Trust pursuant to the UFTA, and to recover a monetary amount equal to the value of the property transferred.  Counts V through VII charge Spencer, Abe, Mehri and Golden with common law fraud, conspiracy and aiding and abetting Najaf's fraud.

## DISCUSSION

**A.    Standard of Review**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, while a Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).    Under either Rule, the Court must construe the allegations in the complaint "in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmoving party's] favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010); *Long*, 182 F.3d at 554.    Where the jurisdictional attack under Rule 12(b)(1) is factual as opposed to facial, however, the Court may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Miller v. F.D.I.C.*, 738 F.3d 836, 840 (7th Cir. 2013).    FirstMerit bears the burden of proof with respect to the question of jurisdiction. *See Petrovic v. City of Chicago*, No. 06 C 6111, 2010 WL 1325709, at *5 (N.D. Ill. Mar. 30, 2010).

To survive a motion to dismiss under Rule 12(b)(6), FirstMerit "must do more in the complaint than simply recite elements of a claim; the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).    A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678. *See also Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010). Although a "formulaic recitation of the elements of a cause of action will not do," *id.* at 678, a plaintiff need provide "only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Reger Dev., LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)).

## B.    Res Judicata

Defendants first argue that the entire lawsuit is barred by the doctrine of res judicata because FirstMerit could have raised the same fraud claims in connection with the October 23, 2012 citation to discover assets in the Foreclosure Case. A citation to discover assets is a supplementary proceeding governed by Section 2-1402 of the Illinois Code of Civil Procedure and Illinois Supreme Court Rule 277. The purpose of the citation proceeding is to discover assets or income of the debtor and compel "the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment." 735 ILCS 5/2-1402(a). There are two categories of parties against whom a judgment creditor may pursue such proceedings: (1) the judgment debtor, and (2) third parties who the judgment creditor believes have property of, or are indebted to, the judgment debtor. *Shipley v. Hoke*, 2014 IL App (4th) 130810, at ¶ 92 (2014) (citing 735 ILCS 5/2-1402). Supplementary proceedings commence when "at the judgment creditor's request, the clerk issues a citation to discover assets, which is then served upon the party sought to be examined." *Id.* at ¶ 77.

Here, FirstMerit pursued a citation to discover Najaf's assets after securing the judgment against him in the Foreclosure Case. During the course of that examination, FirstMerit learned that Najaf made what it believes to be a fraudulent transfer of the Najaf Trust's assets to the Debbie Trust. (Doc. 27, at 7). Fraudulent transfers may be set aside as long as the third party claimant to whom the transfer was made receives a hearing on the issue before entry of any final turnover order. 735 ILCS 5/2-1402(g). Rather than pursue a citation against Najaf's co-Defendants in state court, FirstMerit opted to file this federal lawsuit charging them with fraud. Defendants argue that this decision results in those fraud claims being barred by res judicata, on the theory that since FirstMerit could have pursued state court citations, it was required to do so. The Court disagrees.

Where, as here, the prior adjudication in question was an Illinois state court proceeding, the court must apply Illinois res judicata principles. *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.*, 664 F.3d 1075, 1079 (7th Cir. 2011). The doctrine of res judicata provides that "a final judgment on the merits rendered by a court of competent jurisdiction acts as an absolute bar to a subsequent action between the same parties or their privies involving the same claim, demand, or cause of action." *Wilson v. Edward Hosp.*, 2012 IL 112898, at ¶ 9 (2012). The bar extends to all matters that were actually decided, as well as any matters that could have been decided in the prior action. *Id.* For res judicata to apply, there must be (1) a final judgment on the merits; (2) identity of cause of action; and (3) identity of parties or their privies. *Id.* The party asserting that the doctrine applies has the burden of establishing each of these elements. *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill.2d 484, 491,

626 N.E.2d 225, 228 (1993). As discussed below, the Court finds that Defendants have not met their burden in this case.

### 1. There was No Final Judgment on the Merits in the Citation Proceedings

The first problem with Defendants' res judicata theory is that they have not presented any evidence of a final order stemming from the citation proceedings. In their reply brief, Defendants cite *D'Agostino v. Lynch*, 382 Ill. App. 3d 639, 888 N.E.2d 663 (1st Dist. 2008), for the proposition that "[a]n order in a section 2-1402 proceeding is said to be final when the citation petitioner is in a position to collect against the judgment debtor or a third party, or the citation petitioner has been ultimately foreclosed from doing so." (Doc. 28, at 6) (quoting *D'Agostino*, 382 Ill. App. 3d at 642, 888 N.E.2d at 666). Yet questions about the finality of an order are only relevant if there is in fact an order.

Defendants do not even attempt to identify a court "order" – much less a final one – adjudicating FirstMerit's right to recover funds associated with the specific assets at issue in this case, including the 1648 Property and the 2250 Property. As a result, res judicata cannot apply. *See, e.g., In re Marriage of McElwee*, 230 Ill. App. 3d 714, 719, 595 N.E.2d 738, 741-42 (5th Dist. 1992) (finding no final, appealable order where supplementary garnishment proceedings to enforce a Tennessee judgment had not yet progressed to the point where the respondent could "actually collect the judgment debt out of the subject property."). Defendants' conclusory and unsupported assertion that "[t]he termination of the State court proceeding bars the instant Complaint" is rejected. (Doc. 28, at 7). *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)

(making clear that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

### 2. Defendants Have Not Met their Burden of Establishing an Identity of Parties or Cause of Action

Though lack of a final judgment on the merits suffices to preclude application of res judicata, the Court nonetheless addresses Defendants' arguments regarding identity of parties and cause of action to expose a misunderstanding of the holding in *Michelson v. Schor*, No. 95 C 6573, 1997 WL 282929 (N.D. Ill. May 16, 1997). The plaintiffs in *Michelson* sued the defendant ("Mrs. Schor") and her husband ("Mr. Schor") in federal court (No. 93 C 5124) to recover judgment on a debt against Mr. Schor. *Id.* at *1. In that lawsuit, which "followed Illinois' procedure regarding supplementary proceedings," *id.* at *3, the plaintiffs sought a judgment and order requiring Mrs. Schor to turn over $95,335.52 "that should be applied to satisfaction of the judgment" against Mr. Schor. *Id.* at *1. The plaintiffs explained that Mr. Schor had transferred tens of thousands of dollars to his wife in an "obvious" attempt to "put Schor's assets beyond the reach of his judgment creditors" in violation of the UFTA. *Id.* The district court declined to order the turnover, finding "sufficient evidence of consideration to support" the transfers such that they "were not fraudulent . . . but were . . . [Mr. Schor's] payments in lieu of his contribution to household expenses." *Id.*

The plaintiffs subsequently filed a second lawsuit against Mrs. Schor (No. 95 C 6573) seeking the same $95,335.52 as the previous case, and again raising allegations of fraud under the UFTA. *Id.* at *2. Mrs. Schor argued that res judicata precluded the plaintiffs from relitigating fraud claims that "were or could have been asserted" in the prior lawsuit (No. 93 C 5124). *Id.* The plaintiffs did not dispute the existence of a final

judgment on the merits or an identity of the parties. Thus, the court only considered whether there was an identity of causes of action, meaning the plaintiffs "had the opportunity to fully litigate [their] claim in the previous proceeding." *Id.*

The plaintiffs argued that "the limited scope of a supplementary proceeding would prevent inquiry into the issues relevant to a fraudulent transfer claim such as whether there was intent to defraud the creditors and whether the debtor received reasonably equivalent value for the exchange." *Id.* at *3. In rejecting this argument, the court observed that Illinois procedure "allows the creditor to question anyone who might have information regarding the whereabouts of assets that might be used to satisfy the judgment, and the rules also entitle any third party who claims an interest in those assets to appear and be heard on their claim." *Id.* Since the plaintiffs "could have fully litigated their fraudulent transfer claim in the supplementary proceeding, there was identity of causes of action between plaintiffs' turnover action and the present case." *Id.* at *4.

The current case is readily distinguishable from *Michelson*, not least because Defendants here have not identified any final judgment resulting from the citation proceedings. Contrary to Defendants' assertion, moreover, the *Michelson* court in no way found an identity of parties between Mrs. Schor and other unnamed witnesses the plaintiffs could have questioned about the Schors' assets during the turnover proceeding. (Doc. 28, at 5). As noted, that element of res judicata was not disputed as Mrs. Schor was the sole named defendant in the subsequent lawsuit. *Michelson* thus does not address the situation presented here, where FirstMerit did not name any of Najaf's co-Defendants as parties in the citation proceedings but did affirmatively name

them as parties to this lawsuit.  In the absence of any competent authority for finding identity of parties between the co-Defendants and Najaf in the precise circumstances presented here, this element of res judicata also fails.[3]

Finally, unlike the plaintiffs in *Michelson*, who not only raised their fraud claim in the turnover action, but also received a final ruling from the district court that there was no fraud, FirstMerit did not pursue any fraud allegations during the citation proceedings. Though *Michelson* indicates that a judgment creditor who decides to pursue fraud claims during a supplementary proceeding cannot raise them again in a separate lawsuit, the case in no way establishes that a judgment creditor is *required* to initiate fraud claims during a judgment debtor's citation to discover assets (against third-parties no less) or be precluded from doing so in any other forum.  *See* ILL. S.CT. R. 277(g) (noting that "[s]upplementary proceedings against the debtor and third parties may be conducted concurrently *or consecutively*.") (emphasis added).

### 3.   Summary

For all the reasons stated, Defendants have not met their burden of showing that res judicata applies to bar FirstMerit's Complaint.  The motion to dismiss on this basis is denied.

## C.   *Wilton-Brillhart* Abstention

Defendants next argue that if the case is not barred by res judicata and "the Citation [to discover assets] has not been dismissed," then the Court should abstain from hearing this lawsuit pursuant to the *Wilton-Brillhart* doctrine.  (Doc. 24, at 8) (citing

---

[3]   Defendants provide neither argument nor support suggesting that they were Najaf's privies in the citation proceeding, and any such argument has been waived.  *See, e.g., City of Chicago v. St. John's United Church of Christ*, 404 Ill. App. 3d 505, 513, 935 N.E.2d 1158, 1167-68 (2d Dist. 2010) (examining when privity exists); *Berkowitz*, 927 F.2d at 1384.  In light of the Court's other rulings on the res judicata issue, moreover, the argument is moot in any event.

*Liberty Mutual Ins. Co. v. Mitchell*, No. 15 C 1037, 2015 WL 351362 (C.D. Ill. Jan. 27, 2015)). Under *Wilton-Brillhart* abstention, "district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims." *Liberty Mutual*, 2015 WL 351362, at *4. "There is no set criteria for when a court should exercise its discretion to abstain . . . but the classic example of when abstention is proper occurs where . . . solely declaratory relief is sought and parallel state proceedings are ongoing." *Id.* (quoting *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010)).

The Court understands that FirstMerit has terminated the state court citation proceeding, leaving nothing still pending in the Foreclosure Case. (Doc. 27, at 9). *See also FirstMerit Bank v. Hosseini*, No. 2011-CH-38965, Doc. 48 (showing citation defendant dismissed on 4/24/2014). Absent evidence of any ongoing parallel state court proceeding, Defendants' request for *Wilton-Brillhart* abstention is denied.

## D.    Statute of Limitations

Turning to the statutory fraud claims in Counts II, III and IV, Defendants contend that all three are barred by the applicable statute of limitations. (Doc. 24, at 8). The Court may properly consider this argument on a motion to dismiss because, as discussed below, "the allegations of the complaint set forth everything necessary to satisfy th[is] affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).

The UFTA details the circumstances under which a particular transfer made or obligation incurred by a debtor is fraudulent as to a creditor. The "general purpose of the Act is 'to protect a debtor's unsecured creditors from unfair reductions in the

debtor's estate to which creditors usually look to security.'" *Rush Univ. Med. Ctr. v. Sessions*, 2012 IL 112906, at ¶ 19 (2012) (quoting *In re Randy*, 189 B.R. 425 (Bankr. N.D. Ill. 1995)). Section 5(a)(1) of the Act prohibits transferring property with actual intent to hinder, delay, or defraud a creditor, while Section 5(a)(2) prohibits transfers made without receiving a reasonably equivalent value in exchange. Section 6(a) provides that where a creditor's claim arose before the transfer, that transfer is fraudulent if it was made without receiving a reasonably equivalent value in exchange and the debtor was insolvent at the time of transfer or became insolvent as a result of the transfer. 740 ILCS 160/5, 160/6.

The Act imposes time limits for bringing each type of claim. Claims under Section 5(a)(1) are deemed "extinguished" unless brought "within 4 years after the transfer was made . . ., or, if later, within one year after the transfer . . . was or could reasonably have been discovered by the claimant." 740 ILCS 160/10(a). Claims under Sections 5(a)(2) and 6(a) are both deemed "extinguished" unless brought "within 4 years after the transfer was made." 740 ILCS 160/10(b). As set forth in the Complaint, Count II is brought under Section 5(a)(1), Count III is brought under Section 5(a)(2), and Count IV is brought under Section 6(a). Since FirstMerit filed the Complaint on November 3, 2014, it can recover under all three Sections only if the relevant transfer occurred after November 3, 2010. If the transfer occurred before that date, FirstMerit can still pursue a Section 5(a)(1) claim as long as it can show that it did not discover the transfer until sometime after November 3, 2013, and could not reasonably have done so any earlier.

The Complaint describes a number of transfers Najaf made between 2008 and 2011 but seeks to avoid only one: the October 3, 2011 transfer of the Najaf Trust's 50% interest in Golden to the Debbie Trust. There is no dispute that FirstMerit filed this lawsuit less than four years after that transfer, on November 3, 2014. Thus, the statutory fraud claims are all timely.

Defendants expend significant effort arguing that the statute of limitations started to run well before October 3, 2011 on the theory that all of Najaf's assets had already been transferred out of his control by no later than 2010. (Doc. 24, at 8-9; Doc. 28, at 3-4, 9). Defendants appear to believe that when Najaf moved his properties into Golden and then transferred his 50% interest in Golden into the self-settled Najaf Trust, he effectively terminated his own ability to make future transfers, fraudulent or otherwise. In that regard, Defendants stress that the Najaf Trust made the transfer on October 3, 2011, not Najaf. Defendants argue that since FirstMerit is seeking to collect on a debt owed by Najaf personally, it can only avoid transfers Najaf personally made, and all of those occurred before November 3, 2010, outside the limitations period.

This Court need not decide on this motion to dismiss whether Najaf continued to have control over assets he transferred to Golden and to the Najaf Trust, or whether FirstMerit ultimately will be able to access properties held by Golden to satisfy Najaf's debt. All that matters here is that FirstMerit filed this lawsuit within four years after the October 3, 2011 transfer it seeks to avoid, which is sufficient to survive a motion to dismiss on statute of limitations grounds.[4]

---

[4] For similar reasons, it is premature for the Court to resolve whether the Najaf Trust ever held assets capable of avoidance pursuant to a declaratory judgment because the properties belonged to Golden and not Najaf personally. (Doc. 24, at 13-14).

Before leaving this issue, the Court briefly addresses Defendants' argument that the Section 5(a)(1) claim – even premised on the October 3, 2011 transfer – should still be dismissed pursuant to the "discovery rule."  As noted earlier, claims under this section of the UFTA must be brought either within four years after the allegedly fraudulent transfer was made "or, if later, within one year after the transfer . . . was or reasonably could have been discovered."  740 ILCS 160/10(a).  Oddly, Defendants interpret this language to mean that even though FirstMerit filed this lawsuit within the four year period, the Section 5(a)(1) claim is still barred unless FirstMerit also filed within one year after it could have discovered the fraudulent October 2011 transfer, which Defendants say was no later than October 23, 2012.  (Doc. 24, at 10).  This is contrary to the plain language of the statute, which states that the one year provision comes into play only if the complaint was filed "later" than four years after the allegedly fraudulent transfer occurred.  *See H3 Builders, Inc. v. LCC Venture*, 2013 IL App (2d) 120317-U, at ¶ 33 (2013) (the discovery rule effectively tolls the statute of limitations where a party takes more than four years to bring a claim but files suit within one year after reasonably discovering the existence of that claim).  Since the Court has already determined that FirstMerit filed the Complaint within the four year period, there is no need to consider whether the discovery rule applies.  Defendants' argument in that regard is rejected.

**E.    Sufficiency of Common Law Fraud Allegations**

Defendants next object that Plaintiffs have not pleaded their common law fraud claims in Counts V, VI and VII with the specificity required by Federal Rule of Civil Procedure 9(b).  Rule 9(b) mandates that a plaintiff "state with particularity the

circumstances constituting fraud or mistake."  This includes "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008).  As the Seventh Circuit has "often incanted," a plaintiff "ordinarily must describe the 'who, what, when, where, and how' of the fraud – 'the first paragraph of any newspaper story.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)).  At the same time, "the requisite information – what gets included in that first paragraph – may vary on the facts of a given case." *Id*. at 442.

The Complaint charges Abe, Mehri, Golden and Spencer with a scheme to defraud (Count V), civil conspiracy to defraud (Count VI), and aiding and abetting Najaf's fraud (Count VII).  The Court considers the pleading sufficiency of each count in turn.

### 1.    Scheme to Defraud (Count V)

Defendants argue that FirstMerit has not adequately set forth the elements of a common law fraud claim, which they say requires: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance.  (Doc. 24, at 11-12) (citing *Hoopingarner v. Stenzel*, 329 Ill. App. 3d 271, 278, 768 N.E.2d 772, 778 (3d Dist. 2002)).  FirstMerit responds that these are the elements for common law fraudulent

misrepresentation, a claim not asserted here. (Doc. 27, at 10). *See also Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 847, 920 N.E.2d 1161, 1166 (1st Dist. 2009) (identifying the above five factors as "[t]he elements of a cause of action for fraudulent misrepresentation (sometimes called 'fraud' or 'deceit').").

The Court agrees that FirstMerit need not satisfy the pleading requirements for fraudulent misrepresentation, as this case appears to involve allegations of fraudulent transfers made to keep assets away from creditors. The Court says "appears" because FirstMerit contends that "Defendants would be . . . mistaken to assert that the elements of a common law fraudulent transfer were required." (Doc. 27, at 10). Rather than identifying the exact type of fraud at issue here, however, FirstMerit merely states in conclusory fashion that fraud "comprises all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another," and that "the Complaint is sufficiently pleaded." (*Id.*) (quoting *Bundesen v. Lewis*, 291 Ill. App. 83, 96, 9 N.E.2d 327, 333 (1st Dist. 1937)). The Court thus looks to the specific allegations in the Complaint to determine whether the claim may stand.

Count V focuses first on the 2250 Property, which Najaf transferred to Golden in 2008 and then transferred to the Debbie Trust in October 2011. As part of Defendants' alleged scheme, Debbie conveyed the property to Najaf's sister-in-law, Mehri, in December 2011 to settle a $28,000 debt Najaf owed to her. Yet the property was worth more than $245,000 at the time and Najaf continues to live on the premises. The Complaint alleges that Mehri knew about Najaf's insolvency and financial problems when she acquired the 2250 Property and "had to know" that it was worth much more than the amount of Najaf's debt to her. (Cmplt. ¶¶ 95-97).

Count V also charges that Najaf's brother-in-law Abe knew about Najaf's insolvency but continues to receive and accept payments from Golden in an amount not less than $2,000 per month for a "purported antecedent debt" Najaf owes him. Golden is a participant in the scheme because it transferred the 2250 Property to Mehri, and Spencer is a participant in the scheme because as the trustee of the Debbie Trust, he continues to direct Golden to pay Abe instead of other priority creditors. (*Id.* ¶¶ 98, 99, 101, 102).

In addition to these allegations, the Complaint also explains how Najaf came to owe FirstMerit a $148,313.98 debt; confirms that he has not paid that debt; and states that the transfers made among Najaf and his family members were designed to place Najaf's assets beyond FirstMerit's reach. (*Id.* ¶¶ 29-31, 49, 57-67). As a result of these actions, FirstMerit seeks to recover payments from Mehri, Abe, Spencer and Golden "equal to the value of the 2250 Property" and "equal to the value of any and all payments that have been made to [Abe] by Golden." (*Id.* at 17).

Taken together, the Court finds that these allegations suffice to state a claim for fraudulent transfer, providing the who, what, when, where, and how of the fraud. *See General Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079-80 (7th Cir. 1997) (finding that claim for fraudulent conveyance was alleged with requisite particularity under Rule 9(b) where it included a statement of the date and the conditions under which the defendants became indebted to the plaintiff; a statement that the defendants owe the plaintiff the amount of the debt; a description of the events surrounding the defendants' conveyance of property for the purpose of defrauding the plaintiff and hindering or delaying the collection of the debt; and the plaintiff's demand in

court); *Colman v. Greenfield*, No. 05 C 3894, 2005 WL 2592538, at *3-5 (N.D. Ill. Oct. 11, 2005) (same). Defendants' conclusory assertion to the contrary is insufficient to support dismissing Count V. (Doc. 24, at 12).

### 2. Civil Conspiracy to Defraud (Count VI)

Having determined that FirstMerit pleaded its allegations of fraud with particularity, the Court finds that the allegations of conspiracy found in Count VI likewise suffice to state a claim. *See In re Liburd-Chow*, 434 B.R. 863, 870 (Bankr. N.D. Ill. 2010) (a plaintiff "need not plead the details of conspiracy with particularity," as long as "the alleged underlying fraud [is] pled with specificity."). To succeed on a claim of civil conspiracy under Illinois law, FirstMerit must ultimately establish: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133, 720 N.E.2d 242, 258 (1999)).

Count VI of the Complaint alleges that "Defendants agreed with each other, including with [Najaf], to perpetrate the Scheme on [Najaf's] creditors, including primarily FirstMerit. . . The Scheme was effectuated by (a) [Najaf] fraudulently transferring his interests in Golden in violation of the IUFTA, (b) Golden paying and continuing to pay Abe to cheat and contravene FirstMerit, and (c) Golden transferring the 2250 Property to Mehri to cheat and contravene FirstMerit." (Cmplt. ¶ 106). The Complaint further alleges that Defendants "carried out the Scheme through the Assignment" of Golden to

the Debbie Trust, "the agreed Divorce Judgment" giving Debbie full control of Golden, "and all other overt acts leading up to the execution and effectuation of these agreements." (*Id.* ¶ 107). These allegations satisfy the federal pleading requirements, and Defendants' motion to dismiss Count VI is therefore denied.

### 3.    Aiding and Abetting Fraud (Count VII)

The final common law claim is for aiding and abetting, which requires FirstMerit to allege (1) the party whom the defendant aids performed a wrongful act causing injury; (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (citing *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27-28, 799 N.E.2d 756, 767 (1st Dist. 2003)). *See also In re Restaurant Dev. Group, Inc.*, 397 B.R. 891, 898 (Bankr. N.D. Ill. 2008) ("Illinois courts . . . have recognized aiding and abetting liability for fraudulent conveyances.").

Count VII of the Complaint alleges that Abe, Mehri, Spencer and Golden aided and abetted the following fraudulent acts: (a) Najaf's fraudulent transfer of his interests in Golden to the Debbie Trust, (b) Golden's payments to Abe "to cheat and contravene FirstMerit," and (c) Golden's transfer of the 2250 Property to Mehri "to cheat and contravene FirstMerit." (Cmplt. ¶ 111). FirstMerit alleges that Defendants "were aware of [Najaf's] efforts to evade payment to his legitimate creditors through the above fraudulent acts," and "knowingly and substantially assisted [Najaf] with fraudulent acts in violation of the IUFTA and common fraud." (*Id.* ¶¶ 112, 113). Once again, these allegations, when viewed together with the rest of the Complaint, set forth the who, what, when, where and how of the alleged fraud and suffice to defeat a motion to

dismiss. Defendants' conclusory assertion that FirstMerit "has made none of th[e relevant] allegations" is rejected. (Doc. 24, at 13).

**F.     Property Never Held by Najaf**

Defendants finally ask the Court to strike allegations relating to the 1735-41 Property and the 2227 Property, noting that Najaf never owned either asset and therefore could not have fraudulently transferred them. (Doc. 24, at 11). FirstMerit does not deny Najaf's lack of ownership interest in those properties but views the motion to strike as "worthless and wasteful" because there is nothing prejudicial about having those allegations in the Complaint. (Doc. 27, at 9). In support of this argument, FirstMerit directs the Court to *Davis v. Ruby Foods, Inc.*, 269 F.3d 818 (7th Cir. 2001), where the Seventh Circuit "advise[d] defense counsel against moving to strike extraneous matter "unless its presence in the complaint is actually prejudicial to the defense." *Id.* at 821.

Defendants did not complain of prejudice in their opening memorandum, but the reply brief states that the allegations relating to the 1735-41 Property and the 2227 Property "allude to a prejudicial pattern of conduct." (Doc. 28, at 10). Of course, the fact that Najaf transferred to Golden property that he never even owned could support Defendants' assertion that there was no intent to defraud Najaf's creditors. At this stage of the proceedings, the Court agrees with FirstMerit that it would be a waste of time to strike the challenged allegations, and the motion is therefore denied. The Court will revisit this issue in the event either party seeks to show the Complaint to a jury at trial.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 23) is denied.

ENTER:

Dated: July 13, 2015

_____
SHEILA FINNEGAN
United States Magistrate Judge